IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2002 DEC 23 P 2: 04

CLERK'S OFFICE
AT BALTIMORE

_____DEPUTY

HEATHER THOMPSON SHAI      :

v.                         :    Civil Action No. WMN-02-335

COMSYS INFORMATION         :
  TECHNOLOGY SERVICES, INC. :

**MEMORANDUM**

Before the Court is Defendant's Motion to Dismiss the original complaint, Paper No. 7, as well as two motions to amend the complaint, filed by Plaintiff. Paper Nos. 10, 14. In the interest of efficiency, the Court will deny Defendant's motion to dismiss and Plaintiff's first motion to amend as moot, treat Plaintiff's second motion to amend as a supplemental motion to amend, and consider Defendant's opposition to that second motion as a motion to dismiss. In this posture, the Court will grant Plaintiff's second motion to amend, but will also dismiss some of the counts in Plaintiff's proposed complaint.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

The allegations in the proposed "Second Amended Complaint" are as follows. Plaintiff was employed as a consultant manager by Defendant on April 14, 1999. In March 2001, Plaintiff informed her supervisor, David Raff, that she suffers from a sleep disorder that affects her ability to drive a motor vehicle and to remain awake during the course of the workday. She asserts that she discussed with Raff several possible accommodations for her disability including: working more at

home, working less hours or more flexible hours, and using public transportation.  Defendant summarily rejected these accommodation requests.  Plaintiff further claims that, after she disclosed her disability, one of her major accounts was taken away from her.  She also alleges that she was subjected to embarrassing and offensive incidents of chiding and joking related to her sleep problems.

After Plaintiff told Defendant about her disability, Defendant recommended that Plaintiff apply for benefits under her short-term disability plan.  She did so, and these benefits were approved and commenced on May 2001.  Plaintiff was also granted leave under the Family Medical Leave Act, 29 U.S.C. § 2601 et seq. (FMLA), that leave to run concurrent with her short-term disability benefits.  Those short-term disability benefits were due to expire at the end of July 2001, but upon expiration of those benefits, Plaintiff would have been eligible for long-term disability benefits.  Before that occurred, however, Plaintiff was terminated from her employment on July 13, 2001.  Plaintiff states that she believes that she was discharged, "because of her disability."  Second Amend. Comp. at ¶ 35.

After her termination, Plaintiff went to the Equal Employment Opportunity Office [EEOC] in Baltimore, Maryland and met with an investigator.  Plaintiff asserts that she told this investigator about her disability, the negative treatment that

she received from her employer, and her requests for accommodation. The investigator then drafted a charge of discrimination for Plaintiff's signature. Plaintiff states in an affidavit submitted with her first motion to amend that when Plaintiff read the charge, she noticed that the investigator did not include her allegations concerning requests for accommodation. According to Plaintiff, the investigator assured her that the charge need only include a brief summary, and that additional facts would be developed in the investigation. Plaintiff signed the charge of discrimination as presented.

The EEOC conducted an investigation, was unable to conclude that there had been a violation of the discrimination statutes, and issued a right to sue letter. Plaintiff then filed her initial complaint, alleging "Opposition to [her] proposals for accommodations," "differential treatment," and "retaliation," in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, et seq. (ADA). Plaintiff did not identify the nature of her disability, she simply stated that she "began to show symptoms of a problematic medical condition." Complaint at ¶ 6. Plaintiff was unrepresented by counsel through the filing of her initial complaint in this Court.

Defendant moved to dismiss the initial complaint on the grounds that Plaintiff failed to adequately allege the nature of her disability, and failed to exhaust her administrative remedies

as to her failure to accommodate claim and retaliation claim. Plaintiff, now represented by counsel, opposed the motion, and also moved to amend the complaint to clarify the nature of her disability, as well as to add claims under the Article 49B of the Maryland Annotated Code and under the Montgomery County Code. Shortly after the completion of the formal briefing on Defendant's motion to dismiss and Plaintiff's motion to amend, the parties informally briefed, through the submission of various correspondence, issues related to the Montgomery County Code claims. See Paper Nos. 12 and 13.

Before the Court ruled on these pending motions, Plaintiff filed a second motion to amend, this time withdrawing the causes of action under Maryland Code Ann. art 49B,[1] and adding claims under the FMLA. Thus, the most recent proposed complaint includes the following counts:

> Count I - Disability Discrimination in Violation of the ADA;
>
> Count II - Disability Discrimination in Violation of Md. Code Ann. art. 49B and Montgomery County Code § 27-19;
>
> Count III - Retaliation in Violation of the ADA;
>
> Count IV - Retaliation in Violation of Md. Code Ann. art. 49B and Montgomery County

---

[1] As will be explained below, Counts II and IV of the last proposed complaint still include references to Article 49B of the Maryland Code, but the substantive provisions that Plaintiff is alleging Defendant violated are those of the County Code.

4

```
    Code § 27-19;

        Count V - Discharge in violation of the
    FMLA;

        Count VI - Retaliation in violation of
    the FMLA;
```

In opposing this last motion to amend, Defendant is challenging all but Count I, which Defendant concedes is now adequately pled.

## II. STANDARD FOR MOTION TO DISMISS

When reviewing a 12(b)(6) motion to dismiss, the court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243-44 (4th Cir. 1999). The complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).

## III. DISCUSSION

### A. Retaliation Claims

The ADA makes it unlawful for an employer to discriminate against an employee "because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this

chapter. 42 U.S.C. § 12203. The Court finds that Plaintiff has not stated such a claim, as she identifies no "opposition" or "participation" for which she suffered an adverse employment action.

It appears that Plaintiff's counsel simply misunderstands the nature of a retaliation claim. Counsel argues in the initial opposition to the motion to dismiss, Opp. to Mot. to Dismiss at 8, and again in her most recent pleading that,

> While she did not use the word retaliation, Ms. Shai did provide [the EEOC] with sufficient information for these experienced EEOC representatives to understand and know that Comsys had retaliated against Ms. Shai <u>on the basis of her known disability</u>. Ms. Shai identified the specific actions taken against her by Comsys <u>once Mr. Raff knew about her disability</u>. . . . Given these facts, Comsys cannot credibly claim that it did not know about her disability. Thus, the one reasonable and logical inference which can be drawn from the actions of Comsys is an inference of retaliation.

Reply in Supp. of Mot. to Amend at 6 (emphasis added). Actions taken on the basis of a disability are acts of "discrimination," not "retaliation," as those terms are used in the law. Accordingly, Plaintiff's retaliation claims will be dismissed.

### B. Exhaustion of Accommodation Claim under the ADA

The ADA requires a plaintiff to file a timely charge of discrimination with the EEOC before pursuing a claim in state or federal court. See 42 U.S.C. § 12117(a) (incorporating Title VII procedures of 42 U.S.C. § 2000e-5 to cases under ADA). The scope

of the civil action in that court will be limited to the administrative investigation that could reasonably be expected to follow from the administrative charges of discrimination. See, Evans v. Technologies Applications & Service Co., 80 F.3d 954, 963 (4th Cir. 1996); Chisholm v. United States Postal Serv., 665 F.2d 482, 491 (4th Cir, 1981); Johnson v. Maryland, 940 F.Supp. 873 (D. Md. 1996), aff'd, 113 F.3d 1232 (4th Cir. 1997). Here, Plaintiff's EEOC charge was limited to her claim that she was discharged because of her disability, and did not specifically raise a claim of failure to accommodate. See Mot. to Dismiss, Exh. A (Plaintiff's Charge of Discrimination).

Plaintiff raises two arguments to convince the Court that, despite the absence of a failure to accommodate claim in her EEOC charge, she should be permitted to pursue one here. First, Plaintiff argues that claims of accommodation are "like or related to" or "grow[] out" of allegations of discrimination, and that "[c]laims of workplace disability discrimination imply the need for workplace accommodation." Opp. to Mot. to Dismiss at 6, 7. This Court, however, has rejected similar arguments on several occasions, noting that failure to accommodate claims do not flow, automatically or by necessity, from discrimination claims. See Rohan v. Networks Presentation, LLC, 175 F.Supp.2d 806, 810 (D. MD. 2001) (holding failure to accommodate claim under ADA not exhausted by charge alleging discrimination);

Mayers v. Washington Adventist Hosp., 131 F.Supp.2d 743, 747 (D. Md.) (finding charge for discriminatory discharge did not encompass claim for failure to make reasonable accommodation), aff'd, 22 Fed. Appx. 158 (4th Cir. 2001); Rankin v. Greater Media, Inc., 28 F.Supp.2d 331, 340 (D. Md. 1997) (noting that failure to accommodate is "a separate and distinct theory of liability" not "reasonably expected to follow from claim of discriminatory demotion and retaliatory discharge").  In the instant case, there is no mention of any facts related to requests for accommodation or any indication that Plaintiff was pursuing a failure to accommodate claim on the face of Plaintiff's EEOC Charge.  Significantly, the time frame in which the Charge stated the discrimination occurred was expressly limited to July 13, 2001, the date on which she was terminated.

Plaintiff second argument relates to her claim that she told the EEOC investigator about her requests for accommodation and "relied upon the expertise of [the investigator] to write a proper charge," but the investigator failed to include those facts.  Opp. to Mot. to Dismiss at 7.  While the Court is sympathetic to Plaintiff's plight, the Court finds no authority that would allow consideration of oral statements made to an EEOC intake representative when framing the scope of the exhausted claims.  To the contrary, courts rely almost exclusively on the content of the charge because, as "[o]nly the charge is sent to

the employer, . . .only the charge can affect the process of conciliation." Novitsky v. American Consulting Engineers, L.L.C., 196 F.3d 699, 702 (7th Cir. 1999). This Court recognizes that, where the negligence of an EEOC representative has caused the charge to vary from the scope of the charge intended by the charging party, a few courts have looked outside the four corners of the formal charge to the intake questionnaire, or other written material submitted to the EEOC with the charge. See, e.g., B.K.B. v. Maui Police Dept., 276 F.3d 1091, 1102 (9th Cir. 2002) (finding that if a deficiency in a charge is the result of an EEOC representative's negligence, then the intake questionnaire may be presented as evidence that the claim for relief was administratively exhausted); Rush v. McDonald's Corp., 966 F.2d 1104, 1110-11 (7th Cir. 1992) (allowing consideration of plaintiff's handwritten "EEOC Affidavit" submitted the same day as her EEOC charge) and Box v. A&P Tea Co., 772 F.2d 1372, 1375 (7th Cir. 1985) (considing handwritten additions to typed charge). Nevertheless, where the proffered evidence offered to expand the civil action beyond the scope of the charge is an oral statement made to the EEOC representative, courts have refused to expand the scope of the claims. See Vela v. Village of Sauk Village, 218 F.3d 661, 665 (7th Cir. 2000) (holding that "an oral charge [made to intake officer] not reflected in nor reasonably related to the charge actually filed, is not a sufficient

predicate for a claim of sexual harassment in her civil action").

It is noteworthy that Plaintiff acknowledges that she looked at the EEOC Charge before she signed it, noticed that it did not include a claim for failure to accommodate, and signed it nonetheless. It is perhaps more noteworthy, however, that Plaintiff made no reference, whatsoever, to her requests for accommodation, or Defendant's denial of same, on the detailed intake questionnaire she completed and submitted to the EEOC. Were the Court to follow that line of cases allowing consideration of written material submitted to the EEOC, the Court would still find that Plaintiff has failed to exhaust her failure to accommodate claim.

Thus, that claim will also be dismissed.

### C. Claims Under the Montgomery County Code

Defendant raises a different type of exhaustion argument as to Plaintiff's claims under the Montgomery County Code. Although Plaintiff's position has varied during the course of this litigation, Plaintiff has now clarified that she is bringing claims for violations of the substantive provisions of Chapter 27 of the Montgomery County Code. She also acknowledges, however, that she is bringing those claims under Article 49B, § 42 of the Maryland Code. Section 42 provides, "a person who is subjected to an act of discrimination prohibited by the county code may

bring and maintain a civil action against the person who committed the alleged discriminatory act for damages, injunctive relief, or other civil relief." Md. Code Ann., art. 49B, § 42(a). Section 42 of the Maryland Code also provides that an action under § 42(a) "may not be commenced sooner than 45 days after the aggrieved person files a complaint <u>with the county agency</u> responsible for handling violations of the county discrimination laws." (emphasis added).

It is undisputed that Plaintiff never filed a complaint with the Montgomery County Office of Human Rights ("MCOHR") as required under Article 49B. Regardless, she claims that pursuant to § 27-7 of the Montgomery County Code, Article 49B's exhaustion requirement should be deemed satisfied by her filing of her EEOC complaint. Section 27-7 of the County Code does provide that "[f]iling with any federal or state agency charged with civil rights enforcement constitutes a filing under this article." 27-7(d). The Montgomery County Council, however, is without authority to alter the exhaustion requirement established by the Maryland General Assembly in enacting § 42 of Article 49B. Section 42 clearly states that the administrative complaint must be filed "with the county agency," regardless of what the County Code purports to allow.

### D. Family Medical Leave Act Claims

Plaintiff's counsel's last ditch effort to inject FMLA

claims into this action reflects the same kind of misunderstanding as the attempt to state a retaliation claim. A claim for "Discharge in violation of FMLA" (Count V), should involve an employer terminating an employee because that employee exercised some right under the FMLA, such as taking medical leave. See, e.g., Glunt v. GES Exposition Services, Inc., 123 F.Supp.2d 847, 870 (D. Md. 2000) ("Employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions."). A claim for "Retaliation in Violation of FMLA" (Count VI), should involve the plaintiff suffering some adverse employment action on account of that employee's opposition to some practice made unlawful under the FMLA, or for participating in a proceeding related to some FMLA claim. See 29 U.S.C. § 2615. Plaintiff's most recent complaint contains no such allegations. The only allegations in the last proposed complaint that would arguably relate to the FMLA is Plaintiff's assertion that she was granted leave under the FMLA and that she was laid off while on that leave. See Proposed Amended Complaint at ¶ 55 ("The acts of Comsys in wrongfully discharging Ms. Shai while she was using leave granted under the FMLA, and thus denying Ms. Shai the full benefit of all the leave she was entitled to use under the FMLA constitute willful and intentional violation of FMLA against Ms. Shai based on her disability. . . .") (emphasis added).

There is nothing in the FMLA prohibiting an employer from discharging an employee while on medical leave. See <u>Clay v. Chicago Dept. of Health</u>, 143 F.3d 1092, 1094 (7th Cir. 1998). What is prohibited is discharging the employee <u>because</u> she took, or attempted to take leave. This Plaintiff does not allege. She simply alleges that she was discriminated against because of her disability. This supports nothing more than Plaintiff's discrimination claim under the ADA.

## IV. CONCLUSION

For all of the above-stated reasons, the Court will allow Plaintiff to amend her complaint, but will dismiss all but Count I of that complaint. A separate order consistent with this memorandum will issue.

                                               William M. Nickerson
                                               Senior United States District Judge

Dated: December 23, 2002