IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

HEATHER THOMPSON SHAI,  )
       Plaintiff,  )
         )
v.  )   Civil No. WMN 02-CV-335

COMSYS INFORMATION TECHNOLOGY
SERVICES, INC.,

       Defendant.

## THIRD AMENDED COMPLAINT
(Jury Demand)

Plaintiff, Heather Thompson Shai ("Ms. Shai"), by and through counsel, Mindy G. Farber, R. Douglas Taylor, Jr., Mary E. Henry, and Farber Taylor, LLC, herein sues defendant, Comsys Information Technology Services, Inc.("Comsys"), and for causes of action states as follows:

### INTRODUCTION

This case involves Comsys's insidious and unlawful discrimination on the basis of disability against Ms. Shai, a person with a recognized disability, which resulted in the termination of her employment. In perpetrating this adverse job action against Ms. Shai on the basis of her disability, Comsys has committed willful violations of the American with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"); Md. Code Ann. art 49B, § 14 *et seq.*; the Montgomery County, Maryland Code, Chapter § 27-19; and the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA").

### PARTIES

Ms. Shai is an individual with a medical disability. At all times relevant to the complaint,

she has resided in Gambrills, Maryland and was employed by Comsys in Rockville, Montgomery County, Maryland.

3. Comsys is a Delaware corporation, which routinely conducts business in Maryland. Among other things, Comsys places qualified information technology consultants with local and national businesses.

4. Ms. Shai began her employment at Comsys in April 1999. Comsys terminated her employment on July 13, 2001.

5. David Raff is a Vice President and Managing Director of Comsys, working in the Rockville, Maryland office. At all time relevant herein, Mr. Raff was Ms. Shai's Comsys' supervisor.

## JURISDICTION AND VENUE

6. The averments set forth in paragraphs 1 through 5 are adopted and incorporated herein by reference.

7. This action arises under the American with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*; Md. Code Ann. art 49 B § 14 *et seq.*; the Montgomery County, Maryland Code, Chapter § 27-19; and the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.*

## ADMINISTRATIVE PREREQUISITES

8. The averments set forth at paragraphs   through 7 are adopted and incorporated herein by reference.

9. On or about September 24, 2001, Ms. Shai timely filed an administrative charge of discrimination against Comsys with the Baltimore District Office of the U.S. Equal Employment Opportunity Commission ("EEOC"), EEOC Charge No. 120-A1-1170, alleging discrimination in

employment on the basis of her medical disability. A copy of the charge is attached hereto as Exhibit "A" and incorporated herein by reference.

10. On or about November 2, 2001, the EEOC issued a Notice of Right to Sue on the discrimination charges filed by Ms. Shai against Comsys.

Thereafter, Ms. Shai's original complaint was timely filed.

## FACTS

12. Ms. Shai began her employment with Comsys on April 14, 1999 as an operations specialist. During her employment with Comsys, the company promoted her to a consultant manager.

3. In March 2001, Ms. Shai discussed with David Raff, her supervisor, the serious problems she was encountering in her job because of her sleeping disorders. Ms. Shai advised Mr. Raff that her sleeping disorder kept her awake at night and caused her to experience frequent nap attacks during the day. She also advised Mr. Raff about the medical assessments by her doctors and the medical treatments that she was undergoing to deal with the problem.

14. Between March 2001 and May 2001, Ms. Shai kept Mr. Raff apprized of her medical disability. She continued to advise Mr. Raff about her medical evaluations as she determined the nature and extent of her medical problems. Ms. Shai's medical disability substantially limits one or more of her major life activities, including but not limited to, working and sleeping.

15. By May 2001, Ms. Shai's sleeping disorders had become severe. She advised Mr. Raff about the changes in her medical condition. Ms. Shai also discussed with Mr. Raff the problems she was experiencing with her ability to drive a motor vehicle and to remain awake during the course of her workday as a result of the sleep disorder. On May 4, 2002, Ms. Shai spoke with Mr. Raff

about her physicians' final diagnosis and recommended treatment. Ms. Shai suggested several work accommodations to help her manage her medical condition. Ms. Shai's accommodation requests included working at home more, working fewer hours, modifying her work schedule so that she could come in later, changing her core work hours, or using public transportation. Any or all of Ms. Shai's suggested accommodations would have allowed her to perform the core functions of her job. At the same time, Ms. Shai raised the issue of taking short-term disability leave. At the end of this conversation, Mr. Raff told Ms. Shai that he was reassigning the Concert Telecommunications ("Concert") account, one of the major accounts on which Ms. Shai had worked. He did not give a commensurate reassignment of work to her. Ms. Shai only retained the MCI and GEICO accounts.

16. On May 7, 2001, Ms. Shai again spoke with Mr. Raff about taking short-term disability and about providing her with accommodations for her disability. Mr. Raff denied her requested accommodations. He confirmed that the Concert account had been reassigned to another consultant service manager.

17. At the suggestion of Mr. Raff and Comsys, Ms. Shai applied for disability benefits under Comsys' short-term disability plan. Ms. Shai's short-term disability benefits began in May 2001, and were due to expire at the end of July 2001. Under Comsys' policy, FMLA leave was granted at the same time her short-term disability benefits began. Ms. Shai's FLMA leave ran concurrently with her short-term disability benefits.

18. On July 13, 2001, Comsys terminated Ms. Shai from her position as consultant manager. At the time of her termination, Ms. Shai had been off work since May 2001, on Comsys approved short-term disability and FMLA leave, because of her sleeping disorders. Her short-term disability benefits ended on July 13, 2001. At this time, Ms. Shai would be eligible for long-term disability

4

benefits.

19. As of July 13, 2001, Ms. Shai was still entitled to three weeks of leave under the FMLA. Comsys claims that it terminated Ms. Shai because the number of its billable consultants decreased on one account - the MCI account and therefore, it had to reduce the number consultant service managers assigned to the MCI account. Comsys selected Ms. Shai, one of the consultant service managers for the MCI account, for termination purportedly because she was the least senior consultant service manager on this account

20. In her position as consultant service manager, Ms. Shai worked on three accounts - MCI, Concert and GEICO. In April 2001, Comsys won a Vendor I contract with Concert. This contract would have and in fact has, significantly increased the number of billable consultants which Comsys provides to Concert. At the same time, Comsys knew that the number of billable consultants needed to service the MCI account was declining significantly.

21. Because of the increase in work volume, the Concert account would have supported Ms. Shai's continued employment at COMSYS. COMSYS knew the MCI account was declining in work volume.

22. After Ms. Shai took short-term disability/ FMLA leave in May 2001 and before July 13, 2002, Comsys transferred the least senior consultant service manager from the MCI account to other accounts in the work unit. This action Comsys made Ms. Shai the least senior consultant manager on the MCI account on July 13, 2001, the date Comsys terminated her. Ms. Shai was not the least senior consultant service manager in her work unit or in the Rockville branch of the sales division. She was, however, the only consultant manager terminated.

23. Comsys terminated Ms. Shai's employment because she requested and used leave under

5

FMLA. She took protected FMLA leave to seek treatment for her medical condition.

24. On August  , 2001, Ms. Shai went to the (EEOC) in Baltimore, Maryland for the purpose of talking with an investigator about filing an EEO complaint. Her father, Derek Thompson, accompanied her to the EEOC.

25. On August 1, 2001, Ms. Shai and her father met with Judy Cassell, a supervisor at the EEOC.

26. During her meeting with Ms. Cassell, Ms. Shai told her that until July 13, 2001, she had worked for Comsys, and that on this date, Comsys terminated her employment with them.

27. Ms. Shai told Ms. Cassell that at the time Comsys terminated her, she was receiving short-term disability benefits, which ran concurrently with her FMLA leave at Comsys, for a sleeping disorder, and that she was going to be eligible to start receiving long-term disability for her sleeping disorder at the end of July 2001, when the short-term disability benefits expired.

28. Ms. Shai discussed with Ms. Cassell the significant difficulties she was experiencing with her sleep. She told Ms. Cassell that she would not sleep at night, and that during the day, she would have nap attacks and experience severe sedation problems, which prevented her from driving, among other things.

29. Ms. Shai told Ms. Cassell that she had provided Comsys with several ideas for accommodating her sleeping disorder as she wanted to continue working for the company. Ms. Shai told Ms. Cassell that Comsys had declined all of her suggestions for workload accommodations and had left her no choice but to seek short-term disability benefits, and concurrent FMLA leave.

30. Ms. Shai did not file a complaint of discrimination on this date because Ms. Cassell advised her that an investigator by the name of Regina Davis would be assigned and would contact

6

her.

31. On September 24, 2001, Ms. Shai and her father returned to the EEOC in Baltimore and met with Ms. Davis.

32. Ms. Shai told Ms. Davis that she had been terminated from her employment with Comsys on July 13, 2001, just prior to her eligibility for long-term disability.

33. Ms. Shai explained to Ms. Davis that she had a sleeping disorder which prevented her from driving and that her sleeping disorder kept her awake at night and caused her to sleep at different periods of time during the day, especially when she was driving.

34. Ms. Shai also told Ms. Davis that at the time of her termination, she was receiving short-term disability benefits, which ran concurrent with her FMLA leave, from Comsys and that her disability benefits had begun in May 2001 when her doctors found her totally disabled from working due to her sleeping disorder.

35. Ms. Shai described to Ms. Davis the suggestions she made to Comsys for accommodating her disability which included working more for home, a modified work schedule such as working at different locations or coming in later and leaving later, working less hours, and using public transportation. Ms. Shai told Ms. Davis that Comsys had rejected all her suggestions for accommodation and had not offered any alternative suggestions for dealing with her sleeping disability so that she could continue working while she worked with her physicians to resolve her sleeping disorder.

36. Ms. Shai's job at Comsys as a consultant manager required her to do a lot of driving to service her customers, which she explained to Ms. Davis.

37. During her meeting with Ms. Davis, Ms. Shai told her about several embarrassing and

offensive incidents of chiding and joking with her direct supervisor with whom on several occasions, she had discussed her sleeping disorder and her need for accommodation.

38. Ms. Shai told both Ms. Cassell and Ms. Davis that she believed that Comsys discharged her because of her disability because Comsys retained an employee with less time at the company than she, and because after Comsys became aware of her disability, the company took one of her major accounts away from her and terminated her two weeks prior to her eligibility for long-term disability.

39. While at the EEOC on September 24, 2001, Ms. Davis did prepare a complaint of discrimination form for Ms. Shai's signature.

40. Comsys knew at the time it discharged Ms. Shai that she was on short-term disability benefits which included her leave under the FMLA.

## COUNT I
(Disability Discrimination in violation of the ADA)

41. The averments set forth at paragraphs 1 through 40 are adopted and incorporated herein by reference.

42. The acts of Comsys in wrongfully discharging Ms. Shai, constitute willful, intentional and unlawful discrimination against Ms. Shai based on her disability in violation of the ADA, 42 U.S.C. § 12112.

43. As a result of Comsys' willful, intentional and unlawful discrimination on the basis of disability, Ms. Shai has suffered and will continue to suffer financial hardship, severe emotional and mental distress, loss of wages and benefits, and loss of employment opportunities and career advancement.

44. Ms. Shai has no adequate or complete remedy at law to correct the unlawful employment practices set forth herein, and this suit for damages, injunctive and other equitable relief is her only means of securing adequate relief. Ms. Shai is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Comsys' discriminatory practices unless and until this Court grants relief.

WHEREFORE, Ms. Shai demands judgment against Comsys and prays:

A. That this Court direct Comsys to take such affirmative action as is necessary to ensure that the effects of its unlawful employment practices are eliminated and do not continue to affect Ms. Shai's employment opportunities;

B. That this Court order Comsys to pay Ms. Shai back pay, front pay and other compensation to date, including the value of any back pay, front pay and lost business opportunities and expenses;

C. That this Court award Ms. Shai nominal, general, and compensatory damages in the amount of $300,000, punitive damages in the amount of $300,000, and reasonable front pay;

D. That this Court grant Ms. Shai reasonable attorney's fees and any other costs of this action;

E. That the costs of this action be taxed against Comsys; and

F. That this Court award Ms. Shai such other and further relief as may be deemed just and equitable.

## COUNT II
(Interference in violation of FMLA)

45. The averments set forth at paragraphs 1 through 44 are adopted and incorporated herein by reference.

46. On July 13, 2001, Comsys wrongfully discharged Ms. Shai after she had used only nine weeks of the twelve weeks of leave to which she was entitled under the FMLA. Comsys denied Ms. Shai the full benefit of and interfered with the leave to which Ms. Shai was entitled under FMLA. Comsys' actions constitute a violation of FMLA as Ms. Shai was entitled to three more weeks of leave under FMLA.

47. As a result of Comsys' violation of the FMLA, Ms. Shai has suffered and will continue to suffer financial hardship, severe emotional and mental distress, loss of wages and benefits, and loss of employment opportunities and career advancement.

48. Ms. Shai has no adequate or complete remedy at law to correct the unlawful employment practices set forth herein, and this suit for damages, injunctive and other equitable relief is her only means of securing adequate relief. Ms. Shai is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Comsys' discriminatory practices unless and until this Court grants relief.

WHEREFORE, Ms. Shai demands judgment against Comsys and prays:

> That this Court direct Comsys to take such affirmative action as is necessary to ensure that the effects of its unlawful employment practices are eliminated and do not continue to affect Ms. Shai's employment opportunities;

B. That this Court order Comsys to pay Ms. Shai lost wages, benefits and other compensation, plus interest, which would have been due her had she not been denied leave;

C.  That this Court award Ms. Shai nominal and liquidated damages as allowed by statute;

D.  That this Court grant Ms. Shai reasonable attorney's fees and any other costs of this action;

E.  That the costs of this action be taxed against Comsys; and

F.  That this Court award Ms. Shai such other and further relief as may be deemed just and equitable.

## COUNT III
(Discharge in violation of FMLA)

49. The averments set forth at paragraphs 1 through 48 are adopted and incorporated herein by reference.

50. On July 13, 2001 Comsys wrongfully discharged Ms. Shai because she had requested and was using leave granted under the FMLA. Comsys used Ms. Shai's FMLA leave request and usage as a negative factor in deciding to discharge her. Comsys' actions constitute willful and intentional interference with and violation of the FMLA, 29 U.S.C. § 2601 *et seq.*

51  As a result of Comsys' willful and intentional interference with and violation of the FMLA, Ms. Shai has suffered and will continue to suffer financial hardship, severe emotional and mental distress, loss of wages and benefits, and loss of employment opportunities and career advancement.

52. Ms. Shai has no adequate or complete remedy at law to correct the unlawful employment practices set forth herein, and this suit for damages, injunctive and other equitable relief is her only means of securing adequate relief. Ms. Shai is now suffering and will continue to

11

suffer irreparable injury and monetary damages as a result of Comsys' discriminatory practices unless and until this Court grants relief.

WHEREFORE, Ms. Shai demands judgment against Comsys and prays:

A. That this Court direct Comsys to take such affirmative action as is necessary to ensure that the effects of its unlawful employment practices are eliminated and do not continue to affect Ms. Shai's employment opportunities;

B. That this Court order Comsys to pay Ms. Shai lost wages, benefits and other compensation, plus interest, which would have been due her had she not been denied leave;

C. That this Court award Ms. Shai nominal and liquidated damages as allowed by statute;

D. That this Court grant Ms. Shai reasonable attorney's fees and any other costs of this action;

E. That the costs of this action be taxed against Comsys; and

F That this Court award Ms. Shai such other and further relief as may be deemed just and equitable.

JURY DEMAND

Plaintiff requests a trial by jury on all issues.

Respectfully submitted,

FARBER TAYLOR, LLC

_____
Mindy G. Farber (#04054)
R. Douglas Taylor, Jr. (#22542)
Mary E. Henry (#06195)
One Central Plaza, Suite 808
11300 Rockville Pike
Rockville, Maryland 20852
(301) 881-6800
Counsel for plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this __7__ day of __January__, 2002, I mailed a copy of the foregoing to the following:

Jack L. B. Gohn, Esq.
Gohn, Hankey & Stichel, LLP
Suite 2101
201 North Charles Street
Baltimore, Maryland 21201

_____
R. Douglas Taylor, Jr.

13