IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

HEATHER THOMPSON SHAI,

      Plaintiff

    v.                           Case No. WMN 02-CV-335

COMSYS INFORMATION TECH-
NOLOGY SERVICES, INC.,

      Defendant

DEFENDANT'S MEMORANDUM IN OPPOSITION
TO PETITION FOR ATTORNEY'S FEES
OR, IN THE ALTERNATIVE, IN SUPPORT OF MOTION
FOR RELIEF FROM JUDGMENT

NOTE: In the publication of this document into .pdf format, the document automatically expands to well over the number of pages it covers in printed format. There are two consequences: a) the Table of Contents becomes somewhat inaccurate, and b) the document, which as physically printed conforms to the Court rule that memoranda should be 25 or fewer pages, now exceeds that limit. The Court is assured that this document conforms to the applicable length rules, and that all appearances to the contrary are the technical results of publication to .pdf.

Table of Contents

*Introduction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    *Initial Pleading And Motions Practice* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    *The Fruits of Document Discovery* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    *Mediation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*The Offer of Judgment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Discussion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    *As A Matter of Law, The Offer Included Attorney's Fees* . . . . . . . . . . . . . . . . . 18

    *As A Matter of Fact, The Offer Included Attorney's Fees* . . . . . . . . . . . . . . . . . 19

    *The Attorney's Fees Claims Fail on the Merits* . . . . . . . . . . . . . . . . . . . . . . . . 21

    *Relief From Judgment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Introduction*

The Petition for Attorney's Fees filed by Plaintiff Heather Thompson Shai ("Ms. Shai") is wrong morally, ethically, and as a matter of fact and law. This is a blatant attempt to go back on a settlement and reopen a judgment that the parties had solemnly agreed to.

Defendant COMSYS Information Technology Services, Inc. ("COMSYS"), a provider of temporary employees ("consultants") in the high-tech field, offered judgment under Rule 68 to conclude all relief sought by Ms. Shai in an employment discrimination case. As a matter of law that offer foreclosed attorney's fees. As a matter of fact the letter on its face unambiguously offered judgment including attorney's fees. The context of the parties' preceding negotiations made the import of the letter even clearer. And that should be enough to foreclose any petition for attorney's fees.

And even if this Court should entertain a petition for attorney's fees in this case, such relief would not be warranted. Ms. Shai obtained only a small payment (approximately one half of one percent of what her economist expert witness had claimed her damages to be, and just over 10% of her preceding demand), which was not even the nuisance value of the trial in this case to COMSYS. The statutes upon which Ms. Shai relies allow only "reasonable attorney's fees." In light of the paltry result achieved by her counsel, and counsel's unreasonable behavior throughout, no fees whatsoever could be called reasonable. Her claim for $57,000 is simply outrageous.

1

The Court is urged to give this Petition the short shrift it so justly deserves. However, if the Court would otherwise conclude that the Petition had merit, then the Court should consider whether there was mutual mistake as to the meaning of the offer letter. Rule 60 permits relief from judgment on grounds of mistake, and COMSYS contends that it reasonably and in fact believed its offer letter to include attorney's fees. If this was a mistake, and if the Court is satisfied, against the weight of the evidence, as it should be as a threshold matter before even entertaining Ms. Shai's petition, that in turn Ms. Shai and her counsel believed reasonably and in good faith that the offer letter did not include attorney's fees, then under both Rule 60 and the principles of contract law the Court should relieve COMSYS from the burden of judgment, and permit COMSYS to continue to litigate this case.

*Factual Background*

    *Initial Pleading And Motions Practice*

Ms. Shai commenced this action as a *pro se* plaintiff on January 31, 2002. On a Court-supplied form complaint, she complained of termination in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("the ADA"), and also of failure to accommodate, "differential treatment" and retaliation on the basis of an unspecified disability. COMSYS moved to dismiss on the grounds that the disability was not specified, and for a failure to process or exhaust administratively any charge except termination. Ms. Shai, after obtaining counsel, opposed and moved to amend. This began a tangled

2

process in the course of which Ms. Shai amended her complaint three times, and saw numerous efforts to add new and old theories rejected by the Court.  The process was too complex to reconstruct here, but the salient point was that, while some of Ms. Shai's counsel's efforts to add new theories were deemed to have merit, most were not,[1] and undersigned counsel were deemed correct in their opposition to much of what Ms. Shai's counsel was attempting to do.

In the end, on April 28, 2003, after three tries to amend, and a COMSYS motion for partial summary judgment which the Court denied only because it found that Ms. Shai's affidavit created a question of fact overcoming what would otherwise have been a summary judgment case for COMSYS under COMSYS' affidavit, the Court finally allowed what it called the Second Amended Complaint to proceed.  The case was whittled down to a termination claim under the ADA, and claims for termination and retaliation under the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("the FMLA").  The relief sought, in each Count, included attorney's fees.  (By this point, according to the billing statements submitted with the Petition, Ms. Shai's attorneys, engaging in all this

---

[1]    The Court ended up agreeing with COMSYS that: a) Ms. Shai had not exhausted administrative remedies regarding failure to accommodate; b) Ms. Shai had not exhausted administrative remedies regarding ADA retaliation; c) there is no private right of action under the anti-discrimination provisions of Md. Ann. Code, Article 49B; d) to the extent the Montgomery County Code purports to create a private right of action for violations thereof, such provisions are unconstitutional under the Maryland Constitution; and e) Ms. Shai had not exhausted administrative remedies under Article 49B which were a precondition to her asserting a private right of action under 49B for alleged violations of the Montgomery County Code.

3

largely wasted activity, had already run up fees of $13,623.80, close to a quarter of what they are now seeking.)

The theory of Ms. Shai's case, stripped of the failure-to-accommodate allegations and other allegations that had been dismissed, was that she suffered from a disability, hypersomnia complicated by parasomnias, which had necessitated her going on leave from her roughly $50,000-a-year employment by COMSYS, and that COMSYS had an animus against individuals with her disability and/or had an animus against those who, like Ms. Shai, took FMLA leave; acting on the basis of that alleged animus, COMSYS terminated Ms. Shai while she was on leave.

Ms. Shai acknowledged she had been told that she was selected for termination because she was the most junior incumbent of her position in her unit when a reduction in force had occurred.  The tendered proof of animus was threefold: a) David Raff, Ms. Shai's supervisor, had allegedly made certain comments which could have been inter-preted as derogatory of Ms. Shai's disability, and others which could have expressed irri-tation at another employee taking leave; b) Ms. Shai's colleague Nicci MacKay, a fellow Consultant Service Representative ("CSR"), junior to Ms. Shai within Ms. Shai's unit, had supposedly been moved to a different position after Ms. Shai announced her disabil-ity, thereby rendering Ms. Shai the most junior, and thus exposed to termination instead of Ms. MacKay; and c) a new account was taken from Ms. Shai after she had informed COMSYS of her disability.

4

Most of the facts that should have revealed the hollowness of this position were in the actual or constructive possession of Ms. Shai and her counsel at the outset. Ms. Shai should have known that the move of Ms. MacKay had occurred over a month before COMSYS knew of the disability. Likewise, Ms. Shai should have known or been able to learn through her associates that no CSR had replaced her on the new account that had been taken away. Ms. Shai knew also that she herself had told her therapist shortly before she was laid off that she would soon be seeking new employment (and hence that she could never have lost the COMSYS wages she claims because even if she had been offered the chance, she would never have earned them). Ms. Shai's lawyers had only to ask Ms. Shai's own doctors, who would unanimously have told them that Ms. Shai was completely disabled as from the date she went on leave to at least the day after her FMLA leave would have run out had she still been employed. Whatever the truth about animus (which of course COMSYS absolutely denies), these indisputable facts gravely undercut Ms. Shai's likelihood of proving liability and basically eviscerated Ms. Shai's chances of obtaining more than nominal damages were liability proved. The impact on damages would have been the same no matter how pronounced the animus or how pretextual the articulated reason for termination.

To the date of the Court's order ending the amendment process, settlement discussions had consisted of a demand. On January 28, 2003, Mary Henry, Esq. had communicated a demand of $45,000, which of course was ridiculously high. After the Court's

5

ruling, by call of undersigned counsel on May 2, 2003, COMSYS rejected the demand

and offered $6,500.[2]  On June 23, 2003, Ms. Henry, implicitly rejecting the offer, asked

for mediation, which ended up being set for July 29, 2003.

*The Fruits of Document Discovery*

Before mediation, paper discovery began.  Documents and answers to interrogato-

ries elicited in the discovery, without dispute, revealed a number of facts to both sides.

They demonstrated the inescapable worthlessness of the claim.  Because they cannot be

enumerated adequately except at length, they are set forth in Exhibit 1 to this Memoran-

dum.  However, to summarize, these facts showed beyond dispute as to Ms. Shai's dis-

ability that: a) Ms. Shai's physicians unequivocally considered her to have been totally

disabled from the date she went out on STD and FMLA leave through and including the

day after that leave would have ended, if fully taken; b) Ms. Shai's own

contemporaneously-recorded account of her disabilities tallies entirely with her physi-

cians' assessment; and c) Ms. Shai had not returned to the world of work until for a year

and a half after her termination, and then had gone into a low-stress part-time job.  The

---

[2]      Ms. Shai has stated that "No further discussions took place between the par-
ties" from the date of Ms. Henry's demand until the mediation.  Memorandum at 3.  Un-
dersigned counsel begs to differ.  His file note, date-stamped by his computer on 5/2/03
at 3:28 p.m., reads: "TO MH.  Told her the proposed order is ok w. me, and also offered
$6500.  MH will forward up the line."  ("TO" means outgoing call, and "MH" is of
course Ms. Henry.)  Undersigned counsel personally recalls the conversation.  Ms. Shai's
language on Page 5 that she retained "many medical experts," which suggests that they
were retained by counsel or for this litigation, carries an almost certainly false implica-
tion as well.

6

facts showed, as to damages that: d) Ms. Shai had admitted to her therapist shortly before she was terminated that she intended to seek other work when well enough to do so; and e) Ms. Shai had approximately three weeks left on her short-term disability ("STD") payments and on her FMLA when she was terminated. The facts showed, as to animus, that Mr. Raff, the allegedly discriminatory and retaliatory supervisor, had routinely approved bonuses for Ms. Shai after knowing of her disability, and indeed after her termination.

As against this body of facts, Ms. Shai could only show some vague and ambiguous remarks of Mr. Raff's she remembered or had heard which could be interpreted as revealing animus, and the fact that one account had been taken away from her after the disability was announced (although she was later to learn that the account had not been given to anyone else in her job category).

There was also discovery concerning experts. On July 25, 2003, Ms. Shai identified two experts on whom she expected to rely. Dr. Richard Edelman, an economist, was expected to testify that Ms. Shai's lost income and benefits from her termination were $1,952,817. A starting point for his analysis was that had she not been terminated, Ms. Shai, a 28-year old woman, would have worked until retirement at COMSYS, even though by now both sides had evidence that Ms. Shai's intent was never or only briefly to return to COMSYS. Another starting point for his analysis was the not fully-stated assumption that Ms. Shai would never gain any further ability to work or earn than she received in her new part-time work, currently earning $12,800 per year. Steven Shedlin,

7

a rehabilitation expert, who attempted to make out a case that the very act of terminating Ms. Shai somehow aggravated her disability, was also identified.

On July 8, before the mediation, Ms. Shai filed a notice that her attorney's fees had reached the sum of $45,295.51.

This, then, was the position going into mediation.

A word should be said at this point concerning discussion of the mediation. Under Local Rule 607, the actions of the parties in mediation should not be revealed to the Court "unless otherwise agreed by the parties and the Court." However, the observance of this Rule places an unfair burden on COMSYS at this juncture. Ms. Shai has already violated the Rule by stating that "the mediation ... did not result in a resolution of the case because of an erroneous assumption on the parameters of the mediation by Comsys." Memorandum at 3. In other words, COMSYS has been accused of being at fault in the failure of the mediation, thereby aggravating Ms. Shai's claim for attorney's fees. By making this allegation, Ms. Shai has waived the protection of the Rule, in effect giving her agreement to disclosure, as called for by the Rule. COMSYS hereby adds its own agreement. Now, so long as the Court also assents, the confidentiality can be deemed lifted in keeping with the Rule. If the Court does not assent, it can simply skip the discussion, which begins on the next page and continues through Page 12. But the Court is urged to read this passage; the information contained therein is most material.

*Mediation*[3]

The mediation, conducted by the Hon. Rosalyn Bell, a retired Associate Judge of the Maryland Court of Special Appeals, after certain preliminaries, reached a point at which undersigned counsel was in session with Ms. Henry. Undersigned counsel provided Ms. Henry a number of documents. These included: a) the June 7, 2001 note from Ms. Shai's therapist (Ms. Shai, to reiterate, was terminated July 13, 2001) clearly revealing Ms. Shai's intent to leave COMSYS' employment (Exhibit 2); b) a February 28, 2001 organization chart showing Nicci Mackay already moved from CSR to Vendor Manager (Exhibit 3); c) Ms. Shai's Answers to Interrogatories clearly placing her revelation of her disability to COMSYS on March 13, 2001, *after* Ms. Mackay had been moved (excerpted in Exhibit 4); d) a November 29, 2001 draft letter from Ms. Shai to COMSYS' long-term disability carrier acknowledging how totally Ms. Shai was and had been disabled (Exhibit 5); e) separate letters from Ms. Shai's treating physicians Helene A. Emsellem, Daniel J. Levine, and David Neubauer, all of them attesting to Ms. Shai's disability in 2001 (Exhibits 6-8). Undersigned counsel explained how, in light of these Exhibits and all else known about the case, Ms. Shai's litigation position was next to hopeless.

Specifically, it was explained that:

---

[3]    All facts in this Memorandum are either supported by the record, by Exhibits, or by the Affidavit of Jack L. B. Gohn, Esq., which accompanies this Memorandum.

9

▸   Ms. Shai was not a proper ADA plaintiff because that statute affords a cause of action only to individuals with disabilities who are nonetheless "qualified," meaning that she would have had to be able at the time of her termination to perform the essential functions of her position. Without being able to stay awake reliably, an ability which the medical record and her physicians amply confirmed she did not possess as of the date of Ms. Shai's termination, Ms. Shai had no chance of proving herself "qualified," since every job, CSM included, requires the employee to be awake. And the lack of driving ability was an additional huge problem.

▸   The notion that Nicci MacKay's history would establish animus was completely exploded. It was obvious that if Ms. Mackay was transferred before COMSYS became aware of the disability, that transfer could not be a response to such awareness, and could not have been a hallmark of animus. It was also represented to Ms. Henry that COMSYS had a personnel file on Ms. Mackay to back up the fact of the pre-notification transfer.

▸   Ms. Shai's case for FMLA retaliation, even if the flimsy evidence against Mr. Raff were relied on by the jury, could only prove that COMSYS should have held her job open until the end of the FMLA period (12 weeks), i.e. to July 30, 2001. After that, Ms. Shai would have had to return to work, and the uncontroverted evidence, fully supported by her physicians, was that she would not have been able to return to work.

▸   Moreover, the page from Ms. Acklin's notes showing Ms. Shai's unequivocal intention not to continue working for COMSYS was brought to Ms. Henry's attention, demonstrating that Dr. Edelman's theory of damages, a theory which rested on a baseline assumption that Ms. Shai would always work for COMSYS, was not supportable.

▸   The implication of all of the previous points was that Ms. Shai's only possible damages were the three weeks' STD she would have been able to receive had she remained employed until her FMLA leave ran out. The fairly estimated value of that was less than $1,500.

▸   And the evidence for animus necessary to establish a claim for even the $1500 was flimsy to the point of collapse. It was represented to Ms. Henry that even the account taken from Ms. Shai was never assigned to another CSR. All that Ms. Shai had to support her claim of animus was a few ambiguous remarks by Mr. Raff.

10

Ms. Henry had no good response to any of this. She retired to discuss the case with her client (who was there with her husband), and then word came back through Judge Bell that Ms. Shai was demanding $95,000.

Undersigned counsel was outraged at this. His in-house client had flown in from Texas at great expense, and considerable effort had been devoted to preparing for the mediation. It is well-understood amongst litigators that the settlement process is one of narrowing parameters; in general a defendant only goes up and a plaintiff only goes down from previously stated bargaining positions, absent new facts that strengthen one side's bargaining power. Plaintiff had previously demanded $45,000, and COMSYS had previously offered $6,500, and none of the facts developed since the previous offer helped Ms. Shai at all. Now Ms. Shai was nearly doubling her demand upon having been shown that the case was close to valueless.

Upon undersigned counsel's request, Judge Bell called Ms. Shai and her counsel into the room, to ask an explanation. Ms. Shai's counsel's position was simply that they had sunk additional attorney time into the case since January when they had made their last demand, and that this was justification enough for widening the parameters. No other explanation was offered. Undersigned counsel pleaded for any explanation of why the case had that kind of value. None was forthcoming.

COMSYS, in response to this march backwards on Ms. Shai's part, rejected the demand, marched backwards itself, and offered $3,000. This led to an impasse.

11

Even after the impasse, however, COMSYS tried again to enter into dialogue. Counsel and in-house counsel returned to Ms. Shai's lawyers' offices and asked for any kind of coherent explanation of why the case had any value. Douglas Taylor, Esq., who by then had joined the negotiations, simply refused to provide any explanation whatsoever. He promised to do so later in writing.

Mr. Taylor never lived up to his promise, which was hardly surprising. He had no explanation to provide, because none existed.

After the mediation, the parties proceeded with discovery and plans for depositions. COMSYS revealed that it would call as an expert Charles Smolkin, a rehabilitation specialist who would opine that Ms. Shai's condition was incompatible with continued work as a CSM, and also that Mr. Shedlin's opinion that the failure to continue Ms. Shai's employment somehow aggravated her disability was outside Mr. Shedlin's professional competence. Hence Ms. Shai's counsel knew that it was most doubtful that Mr. Shedlin's testimony would enjoy much of an impact.

The deposition of Ms. Shai herself was set for Thursday, September 4.

*The Offer of Judgment*

It was at this point that COMSYS sent a letter offering judgment under Rule 68. Coming out of the mediation, undersigned counsel, who wrote the letter, understood that Ms. Shai was seeking $95,000, up from her earlier demand of $45,000 on the strength of a $45,000 claim for attorney's fees, the additional $5,000 difference likely owing to the cost of retaining the two experts who had been identified shortly before the mediation.

Undersigned counsel also recognized that a Rule 68 offer (if improvidently rejected) ultimately shifts only costs, and only those costs incurred after the offer is made. Hence those costs already incurred could not be abated by a Rule 68 offer. This means that a correctly calculated offer of judgment must embrace and reimburse for those costs already incurred, and add to it the non-cost balance of the recovery against which the offeror is providing. In cases brought under ADA and FMLA, unlike most cases brought

13

under Title VII, costs do not include attorney's fees.[4]  Given that attorney's fees did not

qualify as costs, the principal costs already incurred were undoubtedly the fees of the ex-

pert witnesses.  Based on their reading of Ms. Shai's offer to include an allocation of

$5,000 for experts, COMSYS' counsel[5] therefore allocated $5,000 for the experts.  Un-

der the correct methodology just discussed, to this should be added the worst-case value

of the remainder of the case in order to come up with a minimal correct settlement figure.

   For reasons already discussed, the maximum non-attorney-fee, non-cost recovery

undersigned counsel could foresee, if COMSYS' strong defenses to liability should

somehow be overcome, was the three weeks of STD Ms. Shai would have received had

she not been terminated, costed out precisely at $1,463.64.  In estimating the offer,

COMSYS also added Personal Time Off that would have been accumulated, costed out

at $296.92.  This meant that the actual damages would be $1,760.56.

   As to the attorney fee recovery, undersigned counsel carefully reviewed the law

on fees to be won if the recovery on the principal claim was *de minimis*.  Based in part on

Judge Legg's dicta in *Cooper v. Harbour Inns of Baltimore, Inc.*, 2000 WL 351373

---

   [4]    29 U.S.C. § 2617(a)(3) (FMLA);  42 U.S.C. § 12205 (ADA).  See
*Sheppard v. Riverview Nursing Center, Inc.*, 88 F.3d 1332 (4th Cir. 1996) and *Webb v. James*, 147 F.3d 617, 622 (7th Cir. 1998).

   [5]    These statements include both undersigned counsel and in-house counsel.

14

(D.Md.),[6] attorney's fees were estimated as coming to the same amount as damages. This led to the following calculation:

| | |
|---|---|
| Damages | $1,760.56 |
| Attorney's Fees | $1,760.56 |
| Interest | $1,000.00 |
| Experts/Costs | $5,000.00 |
| Total | $9,521.12 |

To add a small "cushion" for error, this was rounded up to $10,000.

The task then facing undersigned counsel was to persuade Ms. Shai and her lawyers that this was the right total. And that was the exact task that the letter attempted to perform. Of course the hardest "sell" of these numbers was the small allocation for attorney's fees, and so naturally the lengthiest part of the letter was directed toward this point. The letter, to Douglas Taylor, Ms. Shai's lead counsel, was made an exhibit to the eventual motion for judgment, but its text is here copied verbatim:

> Dear Douglas:
>
> Please consider this letter a formal offer of judgment under Rule 68, F.R.Civ.P. While this letter can of course be offered in evidence in any proceedings under Rule 68, everything said here is without prejudice for purposes of evidence before the finder of fact as to questions of liability.
>
> COMSYS is willing to offer judgment in the amount of $10,000, including costs now accrued.
>
> *We believe this is a generous offer, given your client's* slim likeli-

---

[6]    A technical violation of FMLA leading to ten weeks' sick leave entitlement or $1,940 in damages left the Court "inclined to limit attorney's fees to an amount no greater than plaintiff's actual recovery."

hood of prevailing, and her equally *slim likelihood of obtaining substantial attorney's fees if she does prevail*.

You must acknowledge that you have no claims arising out of anything but Ms. Shai's termination. Failure to accommodate was eliminated from the case by Judge Nickerson's rulings. You do not, as a matter of the law of the case, have a claim that Ms. Shai should have been allowed to work with accommodation up until the date of her termination, no matter how culpable Comsys' failure to accommodate could have been. Moreover, you do not have a claim for consequential damages to Ms. Shai's later career resulting from that alleged failure to accommodate.

All you have, at most, are claims arising from Ms. Shai's termination. But for Ms. Shai to be a candidate for any damages thereunder, she would have had to have been ready, willing and able to work the day after her termination (or, for FMLA purposes, the day after her maximum FMLA leave ran out). Her own doctors have clearly reported that she was not. This means that the maximum lost wages for which Ms. Shai could be eligible would be the approximately three weeks short-term disability she would have accrued had she continued to collect STD during the period between her termination and the expiration of her maximum FMLA period. Needless to say, *our offer of judgment is for a sum approximately double STD for that period plus interest and costs.*

*And that fact, in turn, means that you are highly, highly unlikely to collect substantial attorney's fees. You must be aware of the precedent from the Fourth Circuit (and indeed the District of Maryland) which often limits reasonable attorney's fees to the amount recovered. You must also be aware that in the Fourth Circuit where it is foreseeable that damages will be zero or negligible, attorney's fees are sometimes denied. You should also be aware of Fourth Circuit precedent that FMLA does not support nominal damages, and that a party showing only nominal damages under FMLA is not a prevailing party for attorney's fees purposes.*

I would *therefore* propose that you consider the accompanying offer of judgment adequate, no matter how far short of your client's hopes it may fall. And the offer, as provided by Rule 68, is only good for ten days.

I look forward to hearing from you.

16

Very truly yours,

Jack L. B. Gohn

[*Italics added.*]

The heart of the letter is the sentence: "Needless to say, our offer of judgment is for a sum approximately double STD for that period plus interest and costs." As all of the other components of a possible recovery are mentioned, the only component left to be covered by that doubling is attorney's fees. And this is confirmed by the ensuing discussion. The letter is at pains to point out there is little prospect of recovering attorney's fees. Instead, to drive the point home, as the third paragraph states, the offer is generous "given your client's ... slim likelihood of obtaining substantial attorney's fees..." Obviously, if the offer were holding out any prospect of recovering attorney's fees after acceptance, the likelihood of recovery of attorney's fees would have had no logical relationship to the generosity *vel non* of the settlement figure. Nor would there have been any purpose for the italicized sixth paragraph. As it stood in the letter, the sole possible function of the sixth paragraph was to persuade Ms. Shai to give up on the illusion of obtaining substantial attorney's fees, because pursuit of that illusion ($45,000 and counting) would be fundamentally incompatible with her accepting the much lower offer embodied in the letter. This point and this logical connection were again driven home by the italicized "therefore" in the seventh paragraph.

It is clear, from the time entries presented in support of the fee petition, the rele-

vant items from which are copied as Exhibit 9, that upon receiving the offer letter, all

Ms. Shai's lawyers' work toward preparing for the deposition of Ms. Shai scheduled for

September 4 came to an end.  Instead, there was considerable research (apparently over 5

hours' worth) on attorney's fees in the context of Rule 68, all before the generation of the

letter of September 3, 2003 by which Mr. Taylor on Ms. Shai's behalf accepted the offer.

There can be no doubt at all what all this research was seeking to ascertain: whether it

was possible to create a "gotcha" for COMSYS because the offer letter allegedly did not

address attorney's fees.  If there had been the slightest doubt in Ms. Shai's lawyers'

minds that COMSYS had meant to extinguish Ms. Shai's claims for attorney's fees, they

did not need to do research; they had only to call undersigned counsel or write a letter

and the issue would have been clarified, in writing.  No such call, no such e-mail, no

such letter occurred.  The very absence of a call indicates that those five hours of re-

search were instead dedicated to crafting a "gotcha": accepting the offer and then asking

this Court to hold COMSYS to supplying what they claim the offer omitted: the payment

of attorney's fees.

     That effort should be roundly rejected by this Court.  Justice should not be a game

of "gotcha."  Rule 68 certainly does not mandate any such thing.

*Discussion*

     *As A Matter of Law, The Offer Included Attorney's Fees*

     As the detailed history of the settlement negotiations has made clear, after the me-

18

diation, the claim for attorney's fees was about half the outstanding demand, and the case was brought under statutes that make reasonable attorney's fees all but automatic.  Under such circumstances, the Fourth Circuit has held as recently as this year that as a matter of law, Rule 68 offers of judgment in cases such as this automatically include attorney's fees. *First Financial Ins. Co. v. Hammons*, 2003 WL 264700 (4th Cir. W.Va.), Exhibit 10 hereto.[7]  There the Fourth Circuit considered a claim under a West Virginia common law theory (claim against insurer which had refused to settle claim) that, like the ADA and FMLA, automatically shifted attorney's fees along with liability for the underlying claim to a losing defendant. A claim for wrongful refusal was, as the Fourth Circuit pointed out, "comprised, in substantial part, of attorney's fees."  The language of the offer was no more explicit than the offer here: "First Financial Insurance Company offers to allow judgment to be taken against it in this matter in the sum of Ten Thousand Dollars ($10,000)."  Indeed, nothing in the opinion suggests that the offer letter contained any discussion of attorney's fees similar to the discussion in the offer letter here.  Given the objective facts of automatic shifting and the substantial nature of the fees claimed in the complaint, the Court held that the offer implicitly included attorney's fees.  The concurrence, by Judge Traxler, goes further and says "... in my judgment the offer was un-

---

[7]       This unpublished case is cited pursuant to Rule 36(c), F.R.A.P., as counsel "believes ... that ... [the case] has precedential value in relation to a material issue in a case and that there is no published opinion that would serve as well."  Pursuant to the Rule, a copy of the ruling is appended to this Memorandum.

ambiguous and would have included attorney's fees whether there was an explicit claim for them in the pleadings or not."

*First Financial*'s rationale applies here. While there are cases under FMLA and ADA in which attorney's fees are incidental and much smaller than the principal liability sought, here the claim for attorney's fees, clearly articulated throughout the pleadings and reiterated at mediation, ended up dwarfing the likely recovery. The *First Financial* result should apply as well.

### *As A Matter of Fact, The Offer Included Attorney's Fees*

Courts in some other Circuits have held that Rule 68 letters which do not explicitly include attorney's fees within the offer should be examined to see whether they do so implicitly. See, e.g. Judge Posner's ruling in *Nordby v. Anchor Hocking Packaging Co.*, 199 F.3d 390 (7th Cir. 1999). It opines that "'judgment,' standing by itself, is ambiguous, capable of meaning 'either the substantive relief ordered (whether legal or equitable), or that plus attorney's fees.'" Id. at 392. But context can eliminate potential ambiguity in a Rule 68 letter taken as a whole. It is not necessary that the "magic words" of an explicit offer of "attorney's fees" be written. Instead, a) if the complaint seeks attorney's fees, or b) the text of the letter makes clear that attorney's fees are included in the offer, then the letter is not ambiguous. Both a) and b) apply here. See also *Basha v. Mitsubishi Motor Credit of America, Inc.*, 53 F.R.Serv.3d 52, 2002 WL 1733652 (E.D.La.) (considering both text of letter and extrinsic evidence to hold that letter which did not contain "magic

words" nonetheless included attorney's fees).

Obviously attorney's fees were sought in each count of the Complaint. And the intrinsic evidence of the letter has already been discussed. The discussion of attorney's fees is unambiguously ancillary to an effort to persuade Ms. Shai to accept the amount offered. If the attorney's fees had not been implicitly comprehended within that amount, the discussion would have been utterly nugatory. As *Nordby*, *supra*, says, 199 F.3d at 392, contract law tends to govern in consideration of Rule 68 offers. Contracts are not read to contain nugatory matter if such a construction can be avoided. *Bonnell/Tredegar Industries, Inc. v. N.L.R.B.*, 46 F.3d 339, 344 (4th Cir. 1995). If the discussion of attorney's fees is not treated as nugatory, then Ms. Shai's interpretation must fail.

This result is even more strongly indicated when the extrinsic evidence is considered. The history of the case showed that Ms. Shai had a claim that was close to worthless, and that the major impediment to settlement was Ms. Shai's comparatively huge demand for attorney's fees. That problem had to be negotiated, or there could be no settlement. It would have been supremely unreasonable for COMSYS to have settled for more than the case was objectively worth without disposing of that demand – a fact of which Ms. Shai's counsel could have hardly failed to be aware. In that context, the language of the letter "talking down" the attorney's fees claim could only have had the purpose of persuading the other side to abandon that claim. That would only make sense, in turn, if the proposed abandonment would take the form of accepting the offer, as no

other course of conduct was being suggested by the offer. And hence the only reasonable interpretation of the letter was that the offer it contained entailed the extinguishment of attorney's fees claims.

No matter how it is considered, it should be plain as a matter of objective fact that when Ms. Shai accepted the offer, she accepted an offer that demanded she relinquish claims for attorney's fees.

*The Attorney's Fees Claims Fail on the Merits*

Even if this Court were to entertain a claim for attorney's fees, it should reject them on the merits. The mere fact that "reasonable fees" are automatic under certain circumstances in actions brought under FMLA and ADA does not mean that fees are always awarded where there is a Rule 68 entry of judgment. Here the case was settled for less than full nuisance value, and there was no admission of liability. The possibility of success was remote. In vernacular terms, the settlement was to make the case go away, nothing more. The judgment established a bare right to payment, not liability.

There used to be a disagreement in the cases whether a party who obtained only a nominal or nuisance value was "prevailing." The Supreme Court has resolved that disagreement: the plaintiff does "prevail." But in instances where the recovery is nominal or nuisance, "reasonable" attorney's fees may be zero. *Farrar v. Hobby*, 506 U.S. 103 (1992) (awarding zero "reasonable" attorney's fees to civil rights plaintiff who "asked for a bundle and got a pittance") (O'Connor, J., concurring). Farrar relied largely upon

22

*Texas State Teachers Ass'n v. Garland Ind. School Dist.*, 489 U.S. 782 (1989), which in turn quoted approvingly from *Chicano Police Officers' Ass'n v. Stover*, 624 F.2d 127, 131 (10th Cir. 1980) for the proposition that "Nuisance settlements, of course, should not give rise to a 'prevailing' plaintiff." While, after *Farrar*, a plaintiff who wins a nuisance settlement may technically "prevail," it does not follow that such an outcome gives rise to so much as a penny of "reasonable attorney's fees." This Circuit has addressed the issue in *McDonnell v. Miller Oil Co., Inc.*, 134 F.3d 638 (4th Cir. 1998) (imposing reasonable- ness test on FMLA recovery, citing, *inter alia*, *Wolpoff v. Abramson*, 53 F.3d 626 (4th Cir. 1995) (awarding only 5% of fee claim where plaintiff received only $50 in dam- ages).

Here, as the above discussion should make clear, Ms. Shai's attorneys' own inep- titude in forming a viable complaint, requiring three drafts of the complaint over and above Ms. Shai's *pro se* effort, delayed the case for months, and occasioned $13,623.80 in claimed fees. A proper complaint could have been crafted for a small fraction of that sum. At the point a viable complaint was finally articulated, COMSYS immediately of- fered $6,500, over triple what Ms. Shai could have recovered in judgment even if she had prevailed, and indeed considerably more than what she could have recovered in judgment *plus* any *reasonable* attorney's fees as of that point.

Ms. Shai could and should have settled the case at that point. Whether responsi- bility for the failure to settle rested with Ms. Shai or with her attorneys, it certainly did

23

not rest with COMSYS, which made the offer in good faith and with a clear appreciation of the value of the case.  Instead of settling, however, the case dragged on through activities that Ms. Shai claims cost another $43,000 in attorney's fees, give or take.  And for what?  In the end, she accepted a judgment offer the terms of which included at least *$2,500 less* earmarked for the underlying liability than she could have achieved in May.  A claim for $43,000 worth of time to achieve a negative $2,500 change in recovery on the underlying claim is simply not reasonable, and should not be rewarded.  See *Teague v. Bakker*, 213 F.Supp.2d 571 (W.D.N.C. 2002) (in case arising from collapse of the Jim Bakker ministries, plaintiffs' attorneys knew that bankruptcy precluded most recovery for class members, and so received nothing in $1.2 million claim for attorney's fees); see also *Cooper v. Harbour Inns of Baltimore, Inc.*, 2000 WL 351373 (D.Md.), *supra*.

The discussion in *Teague* is perhaps most apropos.  There the efforts of counsel did not create a cent of recovery for the actual plaintiffs.  (That is similar to the $43,000 component of the claim accrued after the complaint had finally been approved, which netted a negative change in the compensation paid on the actual underlying claim.)  The Court considered whether the lodestar method or the common fund method of computation was appropriate, and concluded it was not clear.  But then the Court added that it did not matter, because:

> ... [R]egardless of the method used, any award must be reasonable. *McDonnell v. Miller Oil Co., Inc.*, 134 F.3d 638, 641 (4th Cir.1998) ("[W]hen 'a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonably hourly

rate may be an excessive amount.'") (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)); *In re Cendant Corp.*, supra; *In re FPI/Agretech Sec. Litig.*, 105 F.3d 469, 475 (9th Cir.1997); *Gottlieb*, 43 F.3d at 482.

In the Fourth Circuit, "the most critical factor in calculating a reasonable fee award is the degree of success obtained...." *McKnight v. Circuit City Stores, Inc.*, 14 Fed.Appx. 147, 149 (4th Cir.2001) (quoting *McDonnell*, supra). That factor does not bode well for counsel in this action.

213 F.Supp.2d at 583. Indeed it did not, as the award turned out to be zero.

This was the right result for the same reason that a zero award would be correct here. There has been practically no net benefit to Ms. Shai from any of her representation. For all of these reasons, the Petition should simply be denied.

*Relief From Judgment*

However, if the Court were otherwise minded to grant the fee petition, then the Court should instead grant relief from judgment. COMSYS reasonably believed that it was offering a judgment that included attorney's fees. If the Court had concluded that Ms. Shai and her attorneys unreasonably believed it did not, then of course the Court would deny attorney's fees. However, if the Court concludes that there was a reasonable and bona fide misapprehension by Ms. Shai and her attorneys on this issue, then this would be a classic mutual mistake situation. Both Rule 60 and general contract law, which is applied to Rule 68 offers, suggest that relief from the judgment would be proper.

The Sixth Circuit considered a similar situation in *Whitaker v. Associated Credit*

25

*Services, Inc.*, 946 F.2d 1222 (6th Cir. 1991). There the Rule 68 offer letter contained the

amount of $500,000. The actual intent was to offer $500. The district court had con-

cluded that the mistake was "just too big a mistake to ignore" and that in any event, the

consideration of Rule 60(b)(1) motions should be governed by equitable considerations.

Its vacating of the judgment was upheld by the appellate court. *Stubblefield v. Windsor*

*Capital Group*, 74 F.3d 990 (10th Cir. 1996), while it turns on matters of appellate juris-

diction, memorializes and does not criticize the ruling of the district court on the motion

to vacate a judgment entered on an offer of judgment that said nothing about attorney's

fees, after plaintiffs had sought to add over $33,000 to a $15,000 judgment by way of a

post-judgment attorney's fees petition. The district court had held that it was proper to

vacate under Rule 60(b)(1) because there had been no meeting of the minds. Reasoned

the district court:

> The offer itself makes no mention of attorney fees, yet it seems to contem-
> plate that acceptance of the offer will fully resolve the Defendants' liability.
> The offer appears to be a lump-sum offer.... The inclusion of attorney's
> fees in the amount of $33,772.75 in a case worth only [$15,000.00] can
> fairly be understood as a material change to the terms of the offer. In addi-
> tion, attorney's fees in the amount of $33,772.75 in a $15,000.00 case do
> not appear consistent with the surrounding circumstances, the purposes,
> and the objects of this agreement.

For these reasons, the district court vacated the judgment, and scheduled a trial. Its rea-

soning was impeccable and fully applicable to the present circumstances.

*Conclusion*

    For these reasons, the Court should either deny the fee petition or, in the alterna-

tive, vacate the judgment and permit the case to proceed.

_____

Jack L. B. Gohn, Bar No. 02823
Gohn, Hankey & Stichel, LLP
Suite 2101
201 North Charles Street
Baltimore, Maryland 21201
Telephone: 410-752-0412
Telecopier: 410-752-2519
jgohn@ghsllp.com
Attorney for Defendant COMSYS Information Technology Services, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of October, 2003, a copy of the aforegoing was mailed, postage prepaid, to:

Douglas Taylor, Esq.
Mary Henry, Esq.
Farber Taylor, LLC
1 Central Plaza
11300 Rockville Pike, Suite 808
Rockville, Maryland 20852-3010

_____

Jack L. B. Gohn

0004612b.wpd

27