58 Fed.Appx. 31  
(Cite as: 58 Fed.Appx. 31, 2003 WL 264700 (4th Cir.(W.Va.)))

Page 1

This case was not selected for publication in the Federal Reporter.

UNPUBLISHED

Please use FIND to look at the applicable circuit court rule before citing this opinion. Fourth Circuit Rule 36(c). (FIND CTA4 Rule 36(c).)

United States Court of Appeals,
Fourth Circuit.

FIRST FINANCIAL INSURANCE COMPANY, Plaintiff-Appellee,
v.
Charles A. HAMMONS, d/b/a Charlie Bob's Bar, Incorporated, Defendant-Appellant,
and
William Keith Medford, Defendant.

No. 02-1208.

Argued Dec. 4, 2002.
Decided Feb. 10, 2003.

Tavern's commercial general liability insurer brought action seeking declaration that it did not have duty to defend or indemnify tavern owner in personal injury suit arising from fight outside of tavern. Owner filed counterclaim alleging breach of contract and breach of common law good faith and fair dealing. After owner accepted insurer's offer of judgment, owner moved for attorney fees incurred in declaratory judgment suit. The United States District Court for the Southern District of West Virginia, Joseph Robert Goodwin, J., denied motion, and owner appealed. The Court of Appeals, King, Circuit Judge, held that insurer's offer of judgment encompassed owner's claim for attorney fees.

Affirmed.

Traxler, Circuit Judge, concurred in result, and filed opinion.

West Headnotes

Federal Civil Procedure ⌬2725
170Ak2725 Most Cited Cases

Insurer's offer of judgment to insured in coverage dispute encompassed insured's claim for attorney fees, even though offer did not specify whether it included such fees, where award of attorney fees was primary substantive relief that insured sought in his counterclaim, and offer of judgment plainly encompassed all damages asserted therein. Fed.Rules Civ.Proc.Rule 68, 28 U.S.C.A.

*31 Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. Joseph Robert Goodwin, District Judge. (CA-01-96-2).

**ARGUED:** Glen A. Murphy, McQueen, Harmon & Murphy, L.C., Charleston, West Virginia, for Appellant. Robert Kemp Morton, III, Huddleston, Bolen, Beatty, Porter & Copen, L.L.P., Huntington, West Virginia, for Appellee. **ON BRIEF:** Todd M. Sponseller, McQueen, Harmon & Murphy, L.C., Charleston, West Virginia, for Appellant. Marvin Capehart, II, Huddleston, Bolen, Beatty, *32 Porter & Copen, L.L.P., Huntington, West Virginia, for Appellee.

Before MICHAEL, TRAXLER, and KING, Circuit Judges.

Affirmed by unpublished opinion. Judge KING wrote the opinion, in which Judge MICHAEL joined. Judge TRAXLER wrote an opinion concurring in the result.

OPINION

KING, Circuit Judge.

**1 Charles Hammons appeals the district court's denial of an attorneys' fees award. Hammons sought the award following his acceptance of a Rule 68 offer of judgment to settle a counterclaim in a declaratory judgment action. As explained below, in the circumstances of this case the court properly declined to award fees, and we affirm.

I.

Hammons owns a neighborhood tavern known as

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

58 Fed.Appx. 31                                                                                         Page 2
(Cite as: 58 Fed.Appx. 31, 2003 WL 264700 (4th Cir.(W.Va.)))

Charlie Bob's Bar, Inc. ("Charlie Bob's"), in Kanawha County, West Virginia. On January 14, 1999, two patrons of Charlie Bob's, William Keith Medford and Michael Robinson, were involved in a fistfight outside the establishment, and Medford was injured. As a result, on September 8, 1999, Medford sued both Robinson and Charlie Bob's in the Circuit Court of Kanawha County (the "Medford Suit"). [FN1]

> FN1. Medford alleged in his Complaint that Hammons, as owner and operator of Charlie Bob's, "did or should have foreseen that the assault against [Medford] would occur because ... Michael Robinson had been involved in similar altercations on prior occasions and has a reputation in the community for violent behavior, particularly when intoxicated."
> Further, Medford alleged that "[o]n the date of the assault, [Hammons] negligently served intoxicating beverages to Michael Robinson when he was intoxicated, even though [he] knew or should have known that doing so increased the danger that Michael Robinson would act in a violent manner."

At the time of the altercation, Charlie Bob's was insured by First Financial Insurance Company ("First Financial") under a commercial general liability policy. After Medford filed suit, Hammons notified First Financial and requested that it defend and indemnify Charlie Bob's in the Medford Suit. First Financial, however, took the position that its policy did not provide coverage against Medford's claims, and it refused to defend or indemnify Charlie Bob's. [FN2]

> FN2. In using the term "coverage," we refer both to the duty of an insurer to defend and to its duty to indemnify.

Following First Financial's denial of coverage, Hammons retained counsel to represent Charlie Bob's in the Medford Suit. Thereafter, Medford dismissed his claims against Charlie Bob's and substituted Hammons, personally, as a defendant. In response, Hammons notified his homeowner's insurer, Liberty Mutual Insurance Group ("Liberty Mutual"), of the Medford Suit, and he requested that Liberty Mutual defend and indemnify him therein. Liberty Mutual agreed to provide Hammons with a defense to the Medford Suit, but it did so with a reservation of its rights. [FN3]

> FN3. When an insurer defends its insured under a "reservation of rights," the insurer reserves its right to discontinue the defense and to deny indemnification if it thereafter determines that a policy exclusion applies.

Hammons retained counsel in November 2000 to assess whether the First Financial policy provided coverage for the claims made against him in the Medford Suit, and whether First Financial was obligated to provide defense and indemnity. On November *33 6, 2000, Hammons demanded of First Financial that it defend and indemnify him in the Medford Suit. In response, First Financial agreed to defend Hammons, but it did so with a reservation of its rights.

On January 31, 2001, First Financial filed this declaratory judgment action against Hammons, d/b/a Charlie Bob's, Inc. (the "First Financial Suit"), in the district court for southern West Virginia, seeking a declaration that it was not obligated to defend or indemnify Hammons in the Medford Suit. Hammons counterclaimed against First Financial, asserting, *inter alia*, breach of contract and breach of common law good faith and fair dealing. In his Counterclaim, Hammons sought from First Financial, *inter alia*, "all damages arising from Plaintiff's breach of contract pursuant to *Hayseeds, Inc. v. State Farm Fire & Cas.,* 177 W.Va. 323, 352 S.E.2d 73 (1986)." [FN4]

> FN4. Specifically, the Counterclaim sought damages "pursuant to *Hayseeds*," as well as "punitive, compensatory and general damages, including pre- and post-judgment interest, attorneys' fees, costs and expenses." Notwithstanding this broad *ad damnum* clause, the crux of a *Hayseeds* claim is its attorneys' fees component. In *Hayseeds,* the Supreme Court of Appeals of West Virginia specifically held that, when an insured "must sue his own

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

58 Fed.Appx. 31
(Cite as: 58 Fed.Appx. 31, 2003 WL 264700 (4th Cir.(W.Va.)))

Page 3

insurance company over any property damage claim, and the [insured] substantially prevails in the action, the company is liable for the payment of the [insured's] reasonable attorneys' fees." 352 S.E.2d at 80. As a corollary thereto, such an insured is also entitled to damages caused by "the delay in settlement, as well as an award for aggravation and inconvenience." *Id.* Thus, while Hammons sought broad common law damages, the claim that uniquely brought his suit within the *Hayseeds* rubric was that for attorneys' fees.

On April 8, 2001, two months after the filing of the First Financial Suit, the Medford Suit was settled. Following the settlement, First Financial, on November 5, 2001, filed a Rule 68 offer of judgment in the First Financial Suit. [FN5] The offer of judgment provided, in pertinent part, as follows:

> FN5. Rule 68 of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:
> At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted ... the clerk shall enter judgment.... If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.
> Fed.R.Civ.P. 68.

**2 First Financial Insurance Company offers to allow judgment to be taken against it in this matter in the sum of Ten Thousand Dollars ($10,000). This offer is made pursuant to the provisions of Rule 68 of the Federal Rules of Civil Procedure and will be deemed withdrawn unless you serve a written notice of acceptance of the offer within ten (10) days of the date that it was served to you.

On November 14, 2001, Hammons accepted the offer of judgment. Pursuant thereto, judgment was entered against First Financial in the district court on November 19, 2001, in the sum of $10,000, plus costs.

Thereafter, on November 30, 2001, Hammons moved the district court for an award of attorneys' fees in the First Financial Suit, maintaining that he had substantially prevailed in his action against First Financial and that he was thus entitled to such fees under *Hayseeds*. In response, First Financial asserted that its offer of judgment encompassed all relief *34 sought in Hammons's Counterclaim, including Hammons's *Hayseeds* claim for attorneys' fees. First Financial maintained that Hammons could not "recover outside the Rule 68 Judgment the damages [he] specifically and repeatedly demanded in [his] Counter-claim." On December 21, 2001, the court denied Hammons's motion for attorneys' fees. *First Fin. Ins. Co. v. Hammons*, Order, No. 2:01-0096 (S.D.W.Va. Dec. 21, 2001). Hammons moved to vacate that ruling, asserting that he had not been permitted to reply to First Financial's objections. After permitting and considering Hammons's reply, the court again denied Hammons's request for attorneys' fees, and it entered the order from which Hammons now appeals. *First Fin. Ins. Co. v. Hammons*, Order, No. 2:01-0096 (S.D.W.Va. Feb. 1, 2002) (the "Order"). We possess jurisdiction pursuant to 28 U.S.C. § 1291.

II.

While we generally review a decision awarding or denying attorneys' fees for abuse of discretion, *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 631 (4th Cir.1999), when, as here, such a ruling is premised on a legal interpretation of a procedural rule, our review is de novo. See *Camacho v. Mancuso*, 53 F.3d 48, 51 (4th Cir.1995) (concluding that the proper standard of review for the interpretation of a federal rule is de novo); see also *Jason D.W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 208 (5th Cir.1998) ( "[I]nterpretation of Rule 68 is an issue of law that we review de novo.").

III.

Hammons asserts that the court erred in denying his motion for attorneys' fees. He contends that the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

58 Fed.Appx. 31  
(Cite as: 58 Fed.Appx. 31, 2003 WL 264700 (4th Cir.(W.Va.)))

Page 4

*[handwritten: our argument]*

offer of judgment was ambiguous with respect to attorneys' fees because it failed to specify whether it included such fees. The ambiguity, he insists, must be construed against the offeror, First Financial.

Hammons is correct that, as a general proposition, an ambiguous Rule 68 offer of judgment should be construed against the offeror. See Nordby v. Anchor Hocking Packaging Co., 199 F.3d 390, 391 (7th Cir.1999) (holding that "any ambiguities in a Rule 68 offer must be resolved against the [offeror]"); Nusom v. Comh Woodburn, Inc., 122 F.3d 830, 833 (9th Cir.1997) (concluding that "the 'usual rules of contract construction' apply to a Rule 68 offer of judgment" and "[t]herefore, ambiguities are construed against the offeror" (citation omitted)). Ambiguities in a Rule 68 offer "must be resolved against the defendant, ... not only because the defendant drafted the offer but also because the plaintiff is being asked to give up his right to a trial." [FN6] Nordby, 199 F.3d at 391-92.

> FN6. Courts have also recognized that "a plaintiff who receives a Rule 68 offer is in a difficult position because the offer has a binding effect when refused as well as when accepted." Webb v. James, 147 F.3d 617, 621 (7th Cir.1998) (noting plaintiff's potential liability for costs after rejecting an offer of judgment).

**3 An offer of judgment that is silent with respect to attorneys' fees may well be ambiguous, depending on the circumstances of the case, because the term " 'judgment' can mean either the substantive relief ordered, ... or that plus attorneys' fees." Id. at 392. In this case, however, we find no ambiguity in First Financial's offer of judgment. The award of attorneys' fees was the primary substantive relief that Hammons sought in his Counterclaim; and the offer of judgment plainly encompassed all damages asserted therein. See Offer of Judgment, First Fin. Ins. Co. v. Hammons, No. 2:01-0096 *35 (S.D.W.Va. Nov. 5, 2001) ("First Financial ... offers to allow judgment to be taken against it in this matter in the sum of Ten Thousand Dollars." (emphasis added)).

In Count II of his Counterclaim, Hammons specifically sought attorneys' fees when he demanded "all damages arising from Plaintiff's breach of contract pursuant to Hayseeds." A Hayseeds claim may well be unique to West Virginia, and its assertion in the Counter-claim compels the conclusion that the offer of judgment encompassed attorneys' fees. In its Hayseeds decision, the Supreme Court of Appeals of West Virginia explained that, in the American system of civil justice, "it is generally held that, in the absence of a statutory or contractual provision providing for such recovery, attorneys' fees may not be recovered in an action on an insurance policy." 352 S.E.2d at 78. As Justice Neely observed, however, "cases between policy-holders and insurers [are] one of the prominent instances where the American rule concerning attorneys' fees works badly." Id. Accordingly, the court ruled that "whenever a policyholder must sue his own insurance company, ... and the policyholder substantially prevails in the action, the company is liable for the payment of the policyholder's reasonable attorneys' fees." Id. at 80. Thus, a Hayseeds claim is comprised, in substantial part, of attorneys' fees. [FN7]

> FN7. The presence of the Hayseeds claim in Hammons's Counterclaim distinguishes this proceeding from one in which a plaintiff's principal claim seeks injunctive relief or damages. Such a plaintiff may ordinarily recover attorneys' fees only by way of a supplemental claim pursuant to a fee-shifting statute. See, e.g., 42 U.S.C. § 1988 (providing for awards of attorneys' fees to plaintiffs who bring successful civil rights actions); 42 U.S.C. § 12205 (providing for awards of attorneys' fees to plaintiffs who bring successful claims pursuant to Americans with Disabilities Act); 5 U.S.C § 552(a)(4)(E) (providing for awards of attorneys' fees to plaintiffs who bring successful claims pursuant to Freedom of Information Act). By contrast, a plaintiff asserting a Hayseeds claim is seeking attorneys' fees as part and parcel of his principal recovery.

We agree with the district court that "attorneys' fees were not something sought outside of the pleadings," but instead "constituted a large part of the relief sought in the [Counterclaim] itself." Order at 3. The court aptly observed that, where "attorneys' fees are actually a part of the substantive

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Page 5 of 5

58 Fed.Appx. 31
(Cite as: 58 Fed.Appx. 31, 2003 WL 264700 (4th Cir.(W.Va.)))

Page 5

relief sought in [the] judgment, then using the word 'judgment' alone in an offer to settle the matter creates no ambiguity." *Id.* at 2. As such, the offer of judgment made by First Financial was, in this setting, unambiguous: the "judgment" that First Financial offered encompassed the *Hayseeds* claim for attorneys' fees that Hammons had advanced in his Counterclaim.

IV.

Pursuant to the foregoing, we affirm the judgment of the district court.

*AFFIRMED.*

TRAXLER, Circuit Judge, concurring in the result.

I agree with my colleagues that the circumstances of this case leave no doubt that the offer of judgment included attorney's fees. I submit this separate opinion only because in my judgment the offer was unambiguous and would have included attorney's fees whether there was an explicit claim for them in the pleadings or not.

58 Fed.Appx. 31, 2003 WL 264700 (4th Cir.(W.Va.))

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works